UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**Juan Tarazona,**

*Plaintiff,*

v.

Case No: 5:21-cv-202

**The Law Offices of Mitchell D. Bluhm
& Associates, LLC d/b/a MBA Law,
CF Medical, LLC,
Paramount Recovery Systems, LP,** *and*
**Experian Information Solutions, Inc.,**

**JURY TRIAL DEMANDED**

*Defendants.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Juan Tarazona**, ("**Mr. Tarazona**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **The Law Offices of Mitchell D. Bluhm & Associates, LLC,** doing business as **MBA Law** ("**MBA Law**"), **CF Medical, LLC** ("**CF Medical**"), **Paramount Recovery Systems, LP** ("**Paramount**"), and **Experian Information Solutions, Inc.** ("**Experian**") (jointly "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Tarazona against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**"), and

against MBA Law, Paramount and CF Medical only for violations of the ***Fair Debt Collection Practices Act***, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

## <u>JURISDICTION AND VENUE</u>

2.      Subject matter jurisdiction exists pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as the Plaintiff is bringing this action under the FCRA and FDCPA, both federal statutes.

3.      The Defendants are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4.      Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## <u>PARTIES</u>

### <u>Mr. Tarazona</u>

5.      **Mr. Tarazona** is a natural person residing in the city of Minneola, Lake County, Florida.

6.      Mr. Tarazona is a *Consumer* as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

### <u>Experian</u>

7.      **Experian** is an Ohio corporation, with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

8.    Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

9.    Experian is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that it, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

### Paramount

10.    Paramount is a Texas limited partnership with a primary business address of 7524 Bosque Blvd. Suite L, Waco, TX 76712.

11.    Paramount is registered to conduct business in the state of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

12.    Paramount is licensed as a Consumer Collection Agency ("**CCA**") by the Florida Office of Financial Regulation and holds license number CCA0900537. **SEE PLAINTIFF'S EXHIBIT A.**

13.    As a licensed CCA, Paramount knows, or should know, the requirements of the FDCPA and FCRA.

## MBA Law

14.    **MBA Law** is a Georgia limited liability company, with a primary business address of **3400 Texoma Parkway, Suite 100, Sherman, TX 75090**.

15.    MBA Law is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

16.    MBA Law is registered with the Florida Office of Financial Regulation as a CCA, holding license number **CCA0900453. SEE PLAINTIFF'S EXHIBIT B.**

17.    As a licensed CCA, MBA Law knows, or should know, the requirements of the FDCPA and FCRA.

## CF Medical

18.    CF Medical is a Nevada limited liability company, with a primary business address of 4730 South Ft. Apache Rd., Ste. 300, Las Vegas, NV 89147.

19.    CF Medical is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

20.    CF Medical is registered with the Florida Office of Financial Regulation as a CCA, holding license number **CCA9903059. SEE PLAINTIFF'S EXHIBIT C.**

21.     As a licensed CCA, CF Medical knows, or should know, the requirements of the FDCPA and FCRA.

22.     Paramount, CF Medical, and MBA Law are "debt collectors" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that they use an instrumentality of interstate commerce, including postal mail and the internet, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### The Alleged Debt

23.     In or around February 2017, Mr. Tarazona allegedly incurred a $800 medical debt (the "**Debt**") to Emergency Physicians of Central Florida ("**EPCF**").

24.     The alleged Debt arose from personal emergency medical services and therefore meets the definition of *debt* under the FDCPA, 15 U.S.C. §1692a(5).

25.     EPCF thereafter sold the Debt to CF Medical, or EPCF sold the Debt to some other successor-in-interest who re-sold it to CF Medical.

26.     In April 2020, CF Medical assigned, or otherwise transferred the Debt to MBA Law for collection.

27.     MBA Law thereafter began reporting the Debt, monthly, to Experian. **SEE PLAINTIFF'S EXHIBIT D.**

28.    MBA Law reported to Experian that Mr. Tarazona owed $800, with an original creditor of EPCF and a Date of First Delinquency ("**DOFD**") of February 2017. *Id.*

29.    MBA Law also reported that the Debt was in collections and the individual responsibility of Mr. Tarazona. *Id.*

### <u>Reporting of certain debts prohibited by the CRAs</u>

30.    Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

31.    The ***Consumer Data Industry Association*** ("**CDIA**") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services.  The CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

32.    Because consumer credit reporting information is such sensitive data, with far reaching implications for consumers, the CDIA works together with CRAs

to develop, maintain and enhance industry-standard reporting formats and guidelines.

33.    In cooperation with major CRAs such as Experian, the CDIA publishes Metro 2 reporting standards ("**Metro 2**") to assist furnishers with their compliance requirements under the FCRA.

34.    Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

35.    FICO® credit scores, developed by the Fair Isaac Corporation, are the most commonly used credit scoring system in the United States.

36.    FICO® credit scores utilize data reported by CRAs and furnishers which are, ostensibly, in compliance with Metro 2 standards.

37.    MBA Law knows, or should know, that entities who perform credit risk scoring (*e.g.*, FICO scores) and other functions utilizing the data reported by MBA Law assume MBA Law's compliance with Metro 2 standards in reporting consumer information.

38.    In March 2016, the major CRAs announced their *National Consumer Assistance Plan* ("**NCAP**"), which was implemented to prevent further action from federal regulatory agencies.

39.    The major CRAs provided copies of this new guidance to their furnishers of data, including MBA Law, in May 2016.

40.     Metro 2 guidelines were updated as part of the NCAP and, effective June 15, 2016, debt collectors were instructed to *not* report debts that "did not arise from a consumer contract or agreement to pay." **SEE PLAINTIFF'S EXHIBIT E.**

41.     The Debt – even assuming, *arguendo*, that Mr. Tarazona is liable for it – clearly did not arise from a consumer contract or agreement to pay.

42.     Despite this guidance being in effect for nearly five years, MBA Law reported the Debt to Experian multiple times.

43.     Upon information and belief, when MBA Law submits information to the CRAs, it is required to attest to the accuracy of its report and that it complies with each CRA's reporting policy.

44.     Thus, for MBA Law to have reported information to the CRAs regarding the Debt, MBA Law would have had to falsely certify its information concerned a debt which arose from a contract or agreement to pay.

45.     However, no written agreement between EPCF and Mr. Tarazona exists pursuant to which the Debt arose.

## Mr. Tarazona's Dispute of the Debt

46.     On January 20, 2021, Mr. Tarazona requested and obtained a copy of his consumer credit disclosure from Experian.

47.     Mr. Tarazona saw the MBA Law tradeline reporting to his credit and on January 27, 2021, disputed MBA Law's reporting of the account.

48.    Experian, upon receipt of Mr. Tarazona's dispute, sent MBA Law an Automated Consumer Dispute Verification ("ACDV") form through an online platform known as e-OSCAR and asked MBA Law to make a reasonable investigation into the dispute.

49.    MBA Law thus knew that Mr. Tarazona disputed the Debt, at least as early as January 27, 2021.

50.    On February 1, 2021, Mr. Tarazona mailed a letter directly to MBA Law, therein also disputing MBA Law's reporting of the Debt to Experian.

51.    MBA Law, in response to Mr. Tarazona's disputes, responded to the ACDV that the accuracy of the reported information ***could not be*** verified and thus requested that Experian delete its tradeline. **SEE PLAINTIFF'S EXHIBIT F.**

52.    Experian sent Mr. Tarazona results of its dispute investigation on or around February 21, 2021, affirming the disputed information concerning the purported debt in collection to EFPC had been deleted.

53.    A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

54.    On information and belief, MBA Law thereafter returned the Debt to CF Medical, noting that Mr. Tarazona disputed the account.

55.    CF Medical, itself a debt collector, thereafter knew, or should have known, that Mr. Tarazona disputed the Debt.

56.    Alternatively, MBA Law failed to communicate that the Debt was disputed, in contradiction to its legal obligations under the FDCPA.

57.    CF Medical thereafter assigned the Debt to another debt collector – Paramount.

58.    On information and belief, CF Medical informed Paramount of Mr. Tarazona's existing dispute.

59.    Alternatively, CF Medical failed to communicate the Debt was disputed after having been informed of such from MBA Law, in contradiction of CF Medical's legal obligations under the FDCPA.

60.    Paramount, in turn, began reporting the Debt monthly to Experian. **SEE PLAINTIFF'S EXHIBIT G.**

61.    Paramount reported the same balance, account status, DOFD, original creditor and ECOA code as MBA Law.

62.    The only difference in the data was the "date assigned" for collection.

63.    Paramount failed to indicate that the Debt was disputed in its report of the Debt. ***Id.***

64.    When reporting information to nationwide CRAs, like Experian, data furnishers, including Paramount, prepare reports using the Metro 2 language created and maintained by the ***Consumer Data Industry Association*** ("**CDIA**").

65.    Metro 2 contains ten "compliance condition codes" ("**CCCs**") for data furnishers to notate accounts as disputed, previously disputed, and so on.

66.    When Paramount re-reported the Debt, it did not report any CCC.

67.    The tradeline thus continued to appear on Mr. Tarazona's credit report as an "non-disputed" debt.

68.    Paramount thus should have reported the Debt with an indication of "account information disputed by consumer," using the CCC code "XB."

69.    Paramount's failure to disclose that the Debt was disputed materially damaged Mr. Tarazona's credit scores.

70.    The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Tarazona suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Experian's Failure to Maintain Reasonable Procedures

71.    Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Experian was required to "maintain reasonable procedures designed to prevent the reappearance in a

consumer's file, and in consumer reports on the consumer, of information that is deleted...."

72.     Paramount reported information which had previously been deleted, changing only the "date assigned" for collection, but leaving all other information unchanged.

73.     On information and belief, Experian systems are programmed to consider information about a particular debt to be "different" so long as the debt collector reporting the debt is a different entity.

74.     The FCRA, however, requires reasonable procedures to prevent the appearance of deleted information. In the instant matter, there was zero material difference in the information reported by MBA Law and Paramount, other than the name of the debt collector.

75.     Had Experian used reasonable procedures, its systems would have flagged this previously-deleted data and blocked it from being reinserted.

76.     Additionally, on information and belief, Experian did not verify that the Paramount tradeline it had previously deleted could now be verified as accurate by Paramount, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

77.     Even assuming, *arguendo*, that Experian had obtained the FCRA-mandated verification of accuracy to reinsert the Paramount tradeline into Mr.

Tarazona's report, it would still be inherently unreasonable to include information from a furnisher of data when that same information, just a month earlier, had been deleted in response to an ACDV, indicating that the information *could not be* confirmed as accurate.

78.     Experian also failed to mail written notice to Mr. Tarazona stating that it was reinserting previously-deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Mr. Tarazona that he has the right to add a statement disputing the accuracy of the supposed Debt.

79.     As a result of the Defendants' actions, disputed unverifiable, previously-deleted information was reinserted into Mr. Tarazona's credit report, without the legally-required notice of dispute.

80.     Experian's re-insertion of previously deleted information into Mr. Tarazona's credit file is the result of flawed procedures that do not flag obviously-identical accounts when reported by two separate data furnishers.

81.     Indeed, on information and belief, Experian does not have procedures in place to "flag" identical credit information, such as account balance, DOFD and original creditor, when reported in separate accounts, and thus Experian regularly re-inserts previously deleted information without notifying the consumer.

82.     Mr. Tarazona has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees and / or has assigned his right to attorney fees and costs to the law firm.

**COUNT I**
**VIOLATIONS OF THE FCRA — EXPERIAN ONLY**

83.     Mr. Tarazona adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

84.     Experian violated 15 U.S.C. § **1681i(a)(5)(B)(i)** when it failed to obtain certification of accuracy of previously-deleted information, specifically, the disputed MBA Law tradeline, and reinserted this information into his credit file without verification.

85.     Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2)** when it failed to provide written notice that it was reinserting previously-deleted information into Mr. Tarazona's credit file, when it re-inserted the disputed MBA Law tradeline without notice to Mr. Tarazona.

86.     Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(I)** when it failed to provide any written notice to Mr. Tarazona that it was reinserting previously-deleted information, when it re-inserted the disputed MBA Law tradeline without notice to Mr. Tarazona.

87.     Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2)** in that it failed to provide the business name and address of the entity associated with the reinsertion of the previously-deleted information.

88.     Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2I)** when it failed to provide written notice that Mr. Tarazona had the right to have a statement of dispute included in his file regarding the re-inserted tradeline.

89.     Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously-deleted tradelines.

90.     Experian's policies could reasonably be foreseen to cause harm to Mr. Tarazona.

91.     Indeed, as a result of Experian's conduct, Mr. Tarazona suffered damage to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

92.     As a result of its conduct, Experian is liable to Mr. Tarazona, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tarazona respectfully requests this Honorable Court enter judgment against Experian and for him for:

a.    The greater of statutory damages of $1,000.00 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tarazona's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b.    Punitive damages for Experian's willful and intentional acts;

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.    Such other relief that this Court deems just and proper

### COUNT II
### VIOLATIONS OF THE FDCPA—MBA LAW & CF MEDICAL ONLY

93.    Mr. Tarazona adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

94.    MBA Law & CF Medical violated **15 U.S.C. § 1692e and 1692e(10)** when MBA Law, acting on behalf of CF Medical and within the scope of its authority, made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, despite CRA guidelines prohibiting the reporting of the Debt, since it did not arise from contract or agreement to pay.

95.    MBA Law & CF Medical violated **15 U.S.C. § 1692e(8)** when MBA Law, acting on behalf of CF Medical and within the scope of its authority, communicated credit information known to be false, specifically, by reporting the

Debt to Experian, when the Debt did not arise from an agreement to pay, contrary to the CRA requirement, thereby falsely indicating that the Debt arose from an agreement to pay.

96.    MBA Law & CF Medical violated **15 U.S.C. § 1692e(2)(a)** when MBA Law, acting on behalf of CF Medical and within the scope of its authority, made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed that the Debt arose from an agreement to pay.

97.    MBA Law also violated **15 U.S.C. § 1692e(8)** when it failed to disclose to CF Medical that Mr. Tarazona disputed the Debt. *PLAINTIFF MAKES THIS PLEADING IN THE ALTERNATIVE TO COUNT III, PARAGRAPHS 104 and 105.*

98.    CF Medical, as principal, is liable for the actions of its agent, MBA Law.

99.    MBA Law & CF Medical's actions render them liable for the above-stated violations of the FDCPA, and Mr. Tarazona is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Tarazona respectfully requests this Honorable Court enter judgment against MBA Law & CF Medical and for him as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

      c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

      d.      Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FDCPA—PARAMOUNT & CF MEDICAL ONLY

100.   Mr. Tarazona adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

101.   Paramount & CF Medical violated **15 U.S.C. § 1692e and 1692e(10)** when Paramount, acting on behalf of CF Medical and within the scope of its authority, made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, despite CRA guidelines prohibiting the reporting of the Debt, since it did not arise from contract or agreement to pay.

102.   Paramount & CF Medical violated **15 U.S.C. § 1692e(8)** when Paramount, acting on behalf of CF Medical and within the scope of its authority, communicated credit information known to be false, specifically, by reporting the Debt to Experian, when the Debt did not arise from an agreement to pay, contrary to the CRA requirement, thereby falsely indicating that the Debt arose from an agreement to pay.

103.    Paramount & CF Medical violated **15 U.S.C. § 1692e(2)(a)** when Paramount, acting on behalf of CF Medical and within the scope of its authority, made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed that the Debt arose from an agreement to pay.

104.    CF Medical also violated **15 U.S.C. § 1692e(8)** when it failed to disclose to Paramount that Mr. Tarazona disputed the Debt. *PLAINTIFF MAKES THIS PLEADING IN THE ALTERNATIVE TO COUNT II, PARAGRAPH 97.*

105.    Likewise, Paramount also violated **15 U.S.C. § 1692e(8)** when it failed to indicate in its reports of the Debt to Experian that Mr. Tarazona disputed the Debt. *PLAINTIFF MAKES THIS PLEADING IN THE ALTERNATIVE TO COUNT II, PARAGRAPH 97.*

106.    CF Medical, as principal, is liable for the actions of its agent, Paramount.

107.    Paramount & CF Medical's actions render them liable for the above-stated violations of the FDCPA, and Mr. Tarazona is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Tarazona respectfully requests this Honorable Court enter judgment against Paramount & CF Medical and for him as follows:

c.     Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

d.     Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on April 7, 2021, by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J Geiger, Esq.
FL Bar Number: 119168
1614 N. 19th St.
Tampa, FL 33605
(813) 321-2348
BGeiger@SeraphLegal.com
Counsel for Plaintiff

**<u>EXHIBIT LIST</u>**

A      Paramount's Florida CCA License
B      MBA Law's Florida CCA License
C      CF Medical's Florida CCA License
D      Plaintiff's Experian Disclosure, January 20, 2021, MBA Law Account
E      Furnisher Data Reporting and Process Requirement Changes May 2016
F      Plaintiff's Experian Dispute Results, February 21, 2021, Excerpt
G      Plaintiff's Experian Consumer Disclosure Results, March 24, 2021, Paramount Account